UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------------------x
BRIANA S.,

        Plaintiff,

                                    COMPLAINT –
                                    CLASS ACTION

      -against-

KRISTIN WOODLICK, R.N., in her official capacity
as Acting Commissioner of the New York State Office of
Mental Health, RAMIN PARSEY, in his official capacity
as Chairman of the Department of Psychiatry at
University Hospital of the State University of New York
at Stony Brook, and SUFFOLK COUNTY,

        Defendants.

---------------------------------------------------------------------x

## INTRODUCTION

      This lawsuit challenges a number of practices of the defendants. This lawsuit first

challenges New York's outpatient commitment law, New York Mental Hygiene Law §

9.60, popularly known as Kendra's Law. The plaintiff asserts that this statute violates the

community integration mandate of the ADA. The plaintiff asserts that Kendra's Law

violates the community integration mandate because it excludes many mentally ill

individuals from treatment under the statute. This statutory exclusion also results in the

provision of psychiatric services in an institutional, *i.e.,* hospital, setting because the

provision of treatment under Kendra's Law could help safely manage some patients who

would otherwise require hospitalization.

      In addition to a challenge to Kendra's Law, this lawsuit challenges the manner in

which psychiatric treatment services in Suffolk County have been implemented pursuant

to Kendra's Law.  Under the supervision of Suffolk County, there has been little or no

attempt to utilize the provisions of Kendra's Law to lessen the instances in which

inpatient facilities subject mentally ill individuals to involuntary hospitalization.  In other

words, there has been little or no attempt to use outpatient commitment as an alternative

to inpatient commitment by providing treatment under Kendra's Laws to individuals

residing in the community.  Rather, inpatient and outpatient providers of treatment

collaborate to provide treatment under Kendra's Law to individuals whom inpatient

providers of treatment wish to discharge from hospitalization.  This action also violates

the ADA.

This lawsuit further challenges the failure of the New York State Office of Mental

Health ("OMH"), the Department of Psychiatry of University Hospital of the State

University of New York at Stony Brook ("Stony Brook"), and Suffolk County to provide

Assertive Community Treatment ("ACT") services to people who suffer from acute

phases of mental illness.  The provision of ACT services could render some mentally ill

individuals non-dangerous who would otherwise be dangerous and hence, meet the civil

commitment criteria in the absence of ACT services.  As a result of this failure, hospitals

located in Suffolk County that provide psychiatric care will involuntarily hospitalize

individuals who could avoid hospitalization with the provision of ACT services.  The

plaintiff asserts that this failure to provide ACT services violates the community

integration mandate of the Americans with Disabilities Act ("ADA"), 28 C.F.R.

35.130(d), which requires state and local governments to provide services in the most

integrated setting appropriate to the needs of disabled individuals.

## PARTIES

1.      Plaintiff Briana S. is an individual who is being involuntarily held pending further evaluation to determine whether or not she requires involuntary hospitalization.

2.      Defendant Kristin Woodlick, R.N., is the Acting Commissioner of OMH and, as such, has the ultimate responsibility for developing a comprehensive plan for the provision of care and treatment to individuals who suffer from mental illness in New York State.

3.      The OMH is responsible for the overall administration of Kendra's Law in New York State.

4.      Defendant Ramin Parsey, M.D., is the Chairman of the Department of Psychiatry at Stony Brook.

5.      Defendant Suffolk County operates the Suffolk County Division of Community Mental Hygiene Services ("SCDCMHS").

6.      In Suffolk County, SCDCMHS is responsible for the implementation of treatment services provided pursuant to Kendra's Law.

7.      SCDCMHS is also responsible for the provision of ACT services to individuals in Suffolk County through its Single Point Of Access ("SPOA") program.

## JURISDICTION AND VENUE

8.      Jurisdiction is conferred upon this court pursuant to the following statutes: (a) 28 U.S.C. §1331, which authorizes jurisdiction of civil actions arising under the Constitution, laws and treaties of the United States.

9.      Venue is conferred upon this court pursuant to 28 U.S.C. § 1391, which authorizes the place of trial in the judicial district in which a substantial part of the events or omissions giving rise to the claim occurred.

RELEVANT STATUTORY SCHEMES

10.     Under Kendra's Law, assisted outpatient treatment means categories of treatment services that have been ordered by a court. N.Y. Mental Hyg. Law § 9.60(a)(1). This includes, but is not limited to, ACT and case management services.

11.     Kendra's Law subjects to outpatient treatment, individuals who, *inter alia*, (a) suffer from mental illness, (b) are unlikely to survive safely in the community without supervision, and (c) have history of lack of compliance with treatment that has resulted in either (i) two hospitalizations within the last thirty-six months, one of which has ended within six months of the attempt to provide compulsory treatment, or (ii) the commission of one or more acts of serious violent behavior or attempts at serious physical harm within the last three years, not including any current period, or period ending in the last six months, in which the person was or is hospitalized. N. Y. Mental Hyg. Law 9.60(c)(4).

12.     A treatment provider that wishes to provide compulsory outpatient treatment under Kendra's Law may do so only pursuant to an order of New York Supreme or County Court after the presentation of evidence. N.Y. Mental Hyg. Law § 9.60(e)-(j).

13.     Pursuant to Mental Hygiene Law § 9.37, a psychiatric hospital, upon an application by the Director of Community Services or his designee, may involuntarily admit an individual when the need for involuntary hospitalization has been confirmed by

4

a staff physician at the hospital prior to admission.  The subject of admission must pose a substantial threat of physical harm to herself or others.  If the hospital wishes to confine the patient for more the seventy-two hours, a second physician at the hospital must confirm that the patient satisfies the criteria for involuntary hospitalization.

14.     Public entities, *i.e.*, state or local governments or their instrumentalities, must administer services and programs in the most integrated setting appropriate to the needs of individuals with disabilities who are qualified to receive services under the government program.  28 CFR § 35.130(d).

## CLASSS ALLEGATIONS

15.     The plaintiff seeks to represent the class of all individuals who suffer from mental illness and who would pose a substantial threat of physical harm to themselves or others in the absence of the provision of ACT services that are administered either voluntarily or pursuant to a court order issued pursuant to Mental Hygiene Law § 9.60 but who would not pose a substantial threat of physical harm to themselves or others with the provision of such services.

16.     The plaintiff seeks to represent the sub-class of individuals who reside in Suffolk County and who would pose a substantial threat of physical harm to themselves or others in the absence of the provision of ACT services that are administered either voluntarily or pursuant to a court order issued pursuant to Mental Hygiene Law § 9.60 but who would not pose a substantial threat of  physical harm to themselves or others with the provision of such services.

17.     The number of all individuals in the putative plaintiff class and subclass are so numerous that joinder of all members is impracticable.

18.     A question of law common to all members of the putative plaintiff state-wide class is whether the failure to provide ACT services as an alternative to hospitalization when these services could help safely manage an individual in the community who would otherwise satisfy the criteria for civil commitment violates the community integration mandate of the Americans with Disabilities Act, 28 C.F.R. § 35.130(d).

19.     A question of fact common to the Suffolk County subclass consists of whether the Comprehensive Psychiatric Emergency Program in Suffolk County, namely Stony Brook, has failed to take steps in collaboration with OMH and Suffolk County as to make available to people subject to civil commitment evaluations in Suffolk County the provision of ACT services as an alternative to hospitalization.

20. The claims of the plaintiff are typical of the claims of all members of the plaintiff class and the Suffolk County subclass.

21.     The plaintiff will fairly and adequately protect the interest of the class and subclass.  No conflict of interest exists between the plaintiff and other class members, and the plaintiff has extensive experience and specialization in mental health law.

22.     A class action is superior to other available methods for the fair and efficient adjudication of the questions raised in this proceeding for the following reason: Because a justiciable case and controversy for each class and subclass member exists for only a brief period of time, a class action helps to ensure that this Court will have jurisdiction to resolve the issues raised in this lawsuit.

## STATEMENT OF FACTS

### Individual Factual Allegations

23.     Briana S. is an individual who suffers from bipolar disorder, depression and anxiety.  She has been psychiatrically hospitalized once previously for one week. Approximately two month ago, Briana S. stopped taking her prescribed medication.

24.     As a result of the discontinuation of her medication, symptoms of her mental illness became exacerbated.

25.     On or about July 30, 2013, Briana S. stated to her mother "I'm done, I'm gone."  Briana meant that she intended to leave home.  However, her mother interpreted this statement as a suicide threat and contacted the police.  The police transported her to the psychiatric emergency room at Stony Brook for evaluation to determine whether she requires involuntary hospitalization.

26.     Briana has manifested numerous behaviors and symptoms of mental illness that psychiatrists believe warrant involuntary hospitalization.  This includes stopping taking medication, suffering an exacerbation of symptoms of mental illness, and having a history of hospitalization.  Indeed, psychiatrists believe that in-patient confinement can help to stabilize an individual by providing the opportunity to carefully monitor one's medication regimen when one has not adhered to her medication regimen.

27.     At this time, Briana S. does not pose a substantial threat of harm to herself or others, particularly with the provision of intensive out-patient services such as ACT, as she has no intent to harm herself or others.

28.     Presently, the provision of intensive out-patient services, such as ACT can help to ensure that Briana S. Can remains on her medication regiment and otherwise safely monitor her.

7

Class-Wide Factual Allegations

29.     For the reasons set forth in paragraphs 30 through 65, the provision of (1) either outpatient treatment pursuant to Kendra's Law or (2) ACT services alone to patients who are undergoing an acute phase of their mental illness can be used to render some individuals non-dangerous, which will enable them to avoid hospitalization.

30.     When an individual is deemed to require evaluation for the need for inpatient care, including the need for involuntary hospitalization if necessary, the individual is generally brought for evaluation to a psychiatric emergency room.

31.     In Suffolk County, the individual is brought to the psychiatric emergency room of Stony Brook.

32.     In Suffolk County, the overwhelming percentage of involuntary hospitalizations are facilitated pursuant to Mental Hygiene Law § 9.37.

33.     In Suffolk County, physicians in the psychiatric emergency room of Stony Brook serve as designees of the Director of Community Services.

34.     Hence, physicians in the psychiatric emergency room assess the need for involuntary hospitalization pursuant to Mental Hygiene Law 9.37. When conducting civil commitment evaluations, physicians in the psychiatric emergency room must determine whether the subject of involuntary hospitalization, poses a substantial threat of physical harm to herself or others, *i.e.,* whether the patient is dangerous.

35.     An assessment of dangerousness is a probability evaluation in that it is a determination of the likelihood of an individual who suffers from mental illness causing harm to oneself or others.

36.     When making an assessment of dangerousness, a psychiatrist will determine whether the patient can be safely managed in the community.

37.     If the patient can be safely managed in the community, then by definition, the individual is not dangerous.

38.     If a patient cannot be safely managed in the community, then by definition, the patient is dangerous.

39.     Presently, in Suffolk County and the rest of New York State, in addition to caring family and friends, only outpatient clinics are generally available to help safely manage in the community individuals whom physicians evaluate for civil commitment.

40.     Hence, if a psychiatrist believes that a patient cannot be safely managed in the community with the provision of treatment provided by an outpatient clinic, then the patient is, by definition, dangerous, and will require involuntary hospitalization.

41.     An ACT team consists of, *inter alia,* a psychiatrist, a social worker and a nurse.

42.     ACT services are psychiatric services in which a psychiatric treatment team will go meet with patients where patients are located instead of having patients traveling to the location of the treatment team.

43.     As detailed below, ACT services can be used to safely manage some patients who could not be safely managed by an outpatient clinic.

44.     Every patient brought to a psychiatric emergency room for evaluation will present along a spectrum of risk, from minimally dangerous to very dangerous.

45.     Numerous factors relate to the severity of risk that a patient poses.

46.      These include what the mental health profession refers to as risk factors: factors known to increase the likelihood of harm-causing behavior.

47.      These factors also include mitigating factors, which are also known as protective factors.  These factors are known to decrease the likelihood of harm-causing behavior.

48.      Community support and supervision and medication compliance are very important mitigating factors.

49.      A psychiatrist conducting a civil commitment evaluation must assess the patient's symptoms of mental illness and the pertinent risk and mitigating factors to determine whether the patient can be safely managed in the community.

50.      As detailed below, ACT services provide greater community support and supervision than does treatment provided by an outpatient clinic, and hence, will facilitate the safe management of some patients whom an outpatient clinic could not safely manage.

51.      The likelihood of a mentally ill person taking medication frequently depends upon the existence of adequate supervision that will help ensure that the person takes medication.

52.      Because clinicians from an ACT team will take affirmative steps to meet with patients, rather than waiting for patients to travel to them, treatment provided by an ACT team will result in a better ability to monitor medication compliance and medication side effects, the latter which can produce an unwillingness to continue with treatment.

53.     Some individuals with mental illness are more likely to comply with their treatment regimen with the provision of ACT services than if they received treatment at an outpatient clinic.

54.     Some individuals with mental illness are more likely to comply with their treatment regimen with the provision of ACT services than if they received treatment at an outpatient clinic because ACT services result in greater monitoring and supervision of patients than does treatment at an outpatient clinic.

55.     The provision of ACT services results in greater monitoring and supervision of patients than does treatment at an outpatient clinic because clinicians who are part of an ACT team can, and will, go to meet with a patient instead of waiting for a patient to come to the outpatient clinic.

56.     Patients who are undergoing an acute phase of their mental illness are often resistant to treatment.

57.     Because ACT services enable clinicians who are part of an ACT team to go meet with patients, the provision of ACT services will generally enable clinicians to have greater oversight and monitoring of patients than do outpatient clinics.

58.     This enhanced oversight and monitoring increases the ability of mental health professionals to safely manage some patients whom outpatient clinics could not safely manage.

59.     Hence, ACT services will help to better ensure that an individual with mental illness continues to comply with a regimen of psychotropic medication than treatment provided by an outpatient clinic.

11

60.     As a result, individuals with mental illness receiving ACT services are more likely to comply with their treatment regimen than if they received treatment by an outpatient clinic.

61.     Kendra's Law authorizes the provision of ACT services to patients as part of court-ordered treatment.

62.     The provision of ACT services pursuant to Kendra's Law facilitates the safe management of individuals suffering from mental illness who may not be safely managed with the provision of ACT services alone.

63.     The provision of treatment pursuant to Kendra's Law will result in a court order directing mentally ill individuals to comply with their treatment regimen.

64.     One reason that the provision of ACT services pursuant to Kendra's Law facilitates the safe management of individuals suffering from mental illness who may not be safely managed with the provision of ACT services alone is that some people will comply with a court order and adhere to the court-ordered outpatient treatment plan who might not adhere to such a plan in the absence of a court order.

65.     A second reason that the provision of ACT services pursuant to Kendra's Law facilitates the safe management of individuals suffering from mental illness who may not be safely managed with the provision of ACT services alone is that Kendra's Law results in an additional layer of monitoring of subjects of Kendra's Law orders that helps to ensure that such individuals adhere to their treatment regimen. This additional level of monitoring does not exist for patients who receive ACT services on a voluntary basis.

66.     As detailed below in paragraphs 67 through 81, in Suffolk County

outpatient clinics are generally the only mode of outpatient treatment available to manage

individuals with mental illness in the community.

67.     OMH has not designed the provision of ACT services alone to help

provide care to patients undergoing an acute phase of their mental illness.

68.     OMH has not administered Kendra's Law in a way to facilitate the

provision of Kendra's Law treatment to help provide prompt care to patients undergoing

an acute phase of their mental illness.

69.     SCDCMHS has failed to develop a policy or practice in which ACT

services alone are promptly available to patients who are suffering an acute phase of their

mental illness.

70.     SCDCMHS has failed to develop a policy or practice in which treatment

administered pursuant to Kendra's Law is promptly available to patients who are

suffering an acute phase of their mental illness.

71.     Stony Brook does not utilize ACT services to provide outpatient treatment

that can be used as an alternative to hospitalization.

72      Stony Brook does not utilize Kendra's Law to provide outpatient treatment

that can be used as an alternative to hospitalization.

73.     Because OMH and SCDCMHS have not implemented any policy or

practice in which ACT services can be provided to individuals suffering an acute phase of

their mental illness, no mechanism exists to obtain, on a systemic bases, the provision of

ACT services for the purposes of safely managing in the community patients who are

suffering an acute phase of their mental illness.

74.    Psychiatrists who work in the psychiatric emergency room at Stony Brook believe that some patients can be safely managed in the community with the provision of treatment provided by an outpatient clinic.

75.    Psychiatrists who work in the psychiatric emergency room at Stony Brook do not believe that treatment provided by an ACT team or other treatment administered pursuant to Kendra's Law can be used to safely manage patients who would otherwise require hospitalization.

76.    As a result, clinicians at Stony Brook make no attempt to facilitate the provision of ACT services alone or treatment pursuant to Kendra's Law to patients who would otherwise require such treatment as a way to safely manage such individuals in the community.

77.    After a patient evaluated at Stony Brook has been determined to require hospitalization, the examining physician, who serves as a designee of the Director of Community Services will certify the patient for involuntary hospitalization pursuant to Mental Hygiene Law § 9.37.

78.    Stony Brook will then either transfer the patient to an admission unit for further evaluation pursuant to Mental Hygiene Law 9.37 or facilitate the transport of the patient  to a different facility that has agreed to accept the patient for admission where the patient will be evaluated for admission pursuant to § 9.37.

79.    SCDCMHS administers the overall operation of Kendra's Law in Suffolk County.

80.     SCDCMHS has failed to develop a process to facilitate the provision of ACT services alone or treatment administered pursuant to Kendra's Law on a prompt basis as to facilitate the use of Kendra's Law as an alternative to inpatient treatment.

81.     As a result of the failure of OMH and SCDCMHS to promptly make available ACT services or other treatment administered pursuant to Kendra's Law on an expedited basis to individuals subject to the civil commitment process, individuals with mental illness, those who satisfy the criteria for Kendra' Law and those who do not, are involuntarily hospitalized when they could live safely in the community with the provision of ACT services alone or treatment administered pursuant to Kendra's Law.

82.     As a result of the failure of OMH and SCDCMHS to promptly make available ACT services or other treatment administered pursuant to Kendra's Law on an expedited basis to individuals subject to the civil commitment process, physicians who conduct psychiatric evaluations cannot consider whether the risk of harm that a patient poses can be sufficiently lowered with the provision of ACT services as to eliminate the need for involuntary hospitalization.

## LEGAL ALLEGATIONS

### First Cause of Action

83.     The plaintiff realleges paragraphs 1 through 82.

84.     As a result of OMH failing to develop a system in which ACT services are used to treat individuals undergoing an acute phase of their mental illness so that ACT services can be used as an alternative to hospitalization by safely managing patients in the community, defendant Woodlick violates the community integration mandate of the ADA, 28 C.F.R. 35.130(d).

## Second Cause of Action

85.    The plaintiff realleges paragraphs 1 through 82.

86.    As a result of Suffolk County failing to ensure that SCDCMHS has
facilitated the use and provision of ACT services to treat individuals undergoing an acute
phase of their mental illness so that ACT services can be used as an alternative to
hospitalization by safely managing patients in the community, Suffolk County violates
the community integration mandate of the ADA, 28 C.F.R. 35.130(d).

## Third Cause of Action

87.    The plaintiff realleges paragraphs 1 through 82.

88.    By failing to attempt to procure ACT services for individuals whom it
evaluates for psychiatric hospitalization so that ACT services can be used as an
alternative to hospitalization by safely managing patients in the community, and by
making civil commitment determinations without consideration as to whether the
provision of ACT services can sufficiently reduce a patient's risk of harm so that he may
be safely managed in the community, defendant Parsey violates the community
integration mandate of the ADA, 28 C.F.R. 35.130(d).

## Fourth Cause of Action

89.    The plaintiff realleges paragraphs 1 through 82.

90.    By failing to authorize compulsory outpatient services to individuals who
do not satisfy the criteria for Kendra's Law treatment under Mental Hygiene Law §
9.60(c)(4), which results in defendants Woodlick, Suffolk County, and Parsey providing,
or facilitating the provision of, involuntary inpatient care to individuals who would not
pose a danger to themselves or others in the community if subjected to compulsory

16

outpatient treatment, New York Mental Hygiene Law § 9.60 violates 28 CFR § 35.130(d) because the state law facilitates treatment that is not in the most integrated setting appropriate to the needs of the individuals subject to involuntary hospitalization.

Fifth Cause of Action

91.     The plaintiff realleges paragraphs 1 through 82.

92.     By failing to act collaboratively to limit the number of involuntary hospitalizations in Suffolk County by developing practices that would utilize outpatient care pursuant to Kendra's Law as an alternative to involuntary hospitalization for people who are living independently in the community, and meet the criteria for treatment pursuant to Kendra's Law, defendants Woodlick, Suffolk County and Parsey violate 28 CFR § 35.130(d)) because these defendants provide treatment that is not in the most integrated setting appropriate to the needs of the individuals subject to involuntary hospitalization.

WHEREFORE, the plaintiff requests the following relief:

a.     Judgment pursuant to 28 U.S.C. § 2201 and Fed.R.Civ.P. 57 declaring that as a result of OMH failing to develop a system in which ACT services are used to treat individuals undergoing an acute phase of their mental illness so that ACT services can be used as an alternative to hospitalization by safely managing patients in the community, defendant Woodlick violates the community integration mandate of the ADA, 28 C.F.R. 35.130(d).

b.     Judgment pursuant to 28 U.S.C. § 2201 and Fed.R.Civ.P. 57 declaring that as a result of Suffolk County failing to ensure that SCDCMHS has facilitated the use and provision of ACT services to treat individuals undergoing an acute phase of their mental

17

Case 2:13-cv-04312-NGG-RML   Document 1   Filed 07/30/13   Page 18 of 20 PageID #: 18

illness so that ACT services can be used as an alternative to hospitalization by safely

managing patients in the community, Suffolk County violates the community integration

mandate of the ADA, 28 C.F.R. 35.130(d).

   c.  Judgment pursuant to 28 U.S.C. § 2201 and Fed.R.Civ.P. 57 declaring that

by failing to attempt to procure ACT services for individuals whom it evaluates for

psychiatric hospitalization so that ACT services can be used as an alternative to

hospitalization by safely managing patients in the community, and making civil

commitment determinations without consideration as to whether the provision of ACT

services can sufficiently reduce a patient's risk of harm so that he may be safely managed

in the community, defendant Parsey violates the community integration mandate of the

ADA, 28 C.F.R. 35.130(d).

   d.  Judgment pursuant to 28 U.S.C. § 2201 and Fed.R.Civ.P. 57 declaring that

by failing to authorize compulsory outpatient services to individuals who do not satisfy

the criteria for Kendra's Law treatment under Mental Hygiene Law § 9.60(c)(4), which

results in defendants Woodlick, Suffolk County, and Parsey providing, or facilitating the

provision of, involuntary inpatient care to individuals who would not pose a danger to

themselves or others in the community if subjected to compulsory outpatient treatment,

New York Mental Hygiene Law § 9.60 violates 28 CFR § 35.130(d) because the state

law facilitates treatment that is not in the most integrated setting appropriate to the needs

of the individuals subject to involuntary hospitalization.

   e.  Judgment pursuant to 28 U.S.C. § 2201 and Fed.R.Civ.P. 57 declaring that

by failing to act collaboratively to limit the amount of involuntary hospitalizations in

Suffolk County by developing practices that would utilize outpatient care pursuant to

18

Kendra's Law as an alternative to involuntary hospitalization for people who are living independently in the community, and meet the criteria for treatment pursuant to Kendra's Law, defendants Woodlick, Suffolk County and Parsey violate 28 CFR § 35.130(d)) because these defendants provide treatment that is not in the most integrated setting appropriate to the needs of the individuals subject to involuntary hospitalization.

      f.      An injunction pursuant to 28 U.S.C. § 2202 requiring defendants Woodlick and Suffolk County to take steps to facilitate the provision of ACT services to patients facing involuntary hospitalization for the purpose of using ACT services to help safely manage patients subject to civil commitment and avoid hospitalization.

      g.      An injunction pursuant to 28 U.S.C. § 2202 requiring defendant Parsey to facilitate the provision of ACT services to patients facing involuntary hospitalization for the purpose of using ACT services to help safely manage patients and avoid hospitalization.

      h.      An injunction pursuant to 28 U.S.C. § 2202 requiring defendants Woodlick, Suffolk County and Parsey to provide, as an alternative to hospitalization, outpatient treatment services pursuant to Kendra's Law to all individuals subject to the civil commitment process, *i.e..*, individuals subject to evaluation for inpatient treatment and not only those individuals who have been hospitalized twice in the last thirty-six months or committed one or more acts of serious violent behavior or attempts at serious physical harm within the last three years, not including any current period, or period ending in the last six months, in which the person was or is hospitalized;

      i.      An injunction pursuant to 28 U.S.C. § 2202 directing defendants Woodlick, Suffolk County and Parsey to develop collaborative policies and practices

19

aimed at providing treatment pursuant to Kendra's Law as an alternative to inpatient

hospitalization for all individuals who can live non-dangerously in the community with

treatment provided pursuant to Kendra's Law;

   j.  Attorney's fees pursuant to 42 U.S.C. § 12205;

   k.  Costs and disbursements; and

   l.  Any other relief that this Court deems just and proper.

Dated: Central Islip, New York
   July 30, 2013

                  WILLIAM M. BROOKS
                  WMB 1544
                  *Attorney for Plaintiff*
                  Mental Disability Law Clinic
                  Touro College
                  Jacob D. Fuchsberg Law Center
                  225 Eastview Drive
                  Central Islip, NY 11722
                  (631)761-7086